## Case No. 4,356.

### The ELIZABETH AND JANE.

[1 Ware (35) 27.][1]

District Court, D. Maine. June Term, 1823.

---

[1] [Reported by Hon. Ashur Ware, District Judge.]

Mr. Ames, for libellants.
Mr. Whitman, for respondents.

WARE, District Judge. As the whole proof in this case is derived from the testimony of the salvors themselves, being interested testimony, and that of the actors in the transaction, it is upon general principles, fairly open to the remarks of the respondents' counsel, as being liable to receive a coloring from the interest or feelings of the witnesses. They have a direct interest in magnifying the difficulties and dangers of the service, because it is well understood by them that these are always taken into consideration in determining the amount of the salvage; and it is contended that in this case the story of the witnesses bears evident marks of exaggeration. It is said that the wreck could not have been twenty leagues from Seguin, when found by the salvors, as well from the ascertained situation of the Merit the day before, as from the fact that in six hours' towing with an unfavorable wind part of the time, they brought Seguin light in sight, at a distance not exceeding five leagues. The entry in the log-book, stating the supposed situation of the wreck, is an interlineation, and this, it is contended, is an after-thought, interpolated after the regular entry of the events of the day. It must be admitted that the appearance of the log-book favors the supposition, and if the place where the wreck was found formed a material ingredient in the case, the argument drawn from it would deserve careful consideration. At any rate, if it were an interpolation, made with a fraudulent view of enhancing the salvage, it deserves severe reprehension. But there is no reason for believing that all the salvors participated in the act.

In cases of salvage, it usually happens that the salvors are the only persons by whom the most important and material facts which go to determine the rate of salvage can be proved, as no others are present. They are therefore admitted, from the necessity of the case, as witnesses, in order that services entitled to a generous remuneration, as well upon principles of public policy as private justice, may not go unrewarded. As the law admits their testimony in their own case, by a special exception to the general rule of evidence in their favor, they are bound to disclose the facts in all fairness and candor. And it ought to be an inducement to this, that it is the known habit of courts of admiralty to allow on these occasions a liberal and generous reward. It is not simply a compensation graduated by the amount of labor, and the degree of danger attending the service, but looking to the general interest and security of commerce, the courts allow such a reward as will operate as a bounty to induce men who are fearless of danger, and familiar with the perils of the sea, to adventure on these hazardous enterprises. And there is another consideration which enters into these cases as a motive for compensating these services with a free and liberal hand, which applies to the matter now under consideration. It is to take from the salvors the temptation to fraud, dishonesty, and embezzlement. It is to reward their honesty and integrity, as well as their enterprise and courage. With this known liberality of practice, every court would witness with great regret any attempt on the part of the salvors to enhance the rate of salvage by false pretensions and exaggerated accounts of the dangers and difficulties of the service. Positive fraud, as embezzlement, is punished by a forfeiture of salvage. And should it be found that the salvors, by false pretenses and fraudulent misrepresentations, endeavored to impose a belief of imaginary dangers, and hardships which had never been encountered, if the court should not think itself bound to visit such disingenuousness with an absolute forfeiture of all salvage, it might feel it to be a duty to admonish the salvors of the obligation of truth and fairness, by the allowance of a diminished salvage. For while courts of admiralty are habitually liberal in awarding a generous compensation, they require of the salvors the utmost honesty and good faith.

In the present case, however, except the suspicious appearance of the log-book, and, supposing it to be a fraudulent interpolation, as the counsel for the claimants contends, there is no ground for imputing the act to all the salvors, I see nothing in the evidence that wears the appearance of an attempt to enhance the merits of the service by an overcharged representation of dangers and hardships. The whole story appears exceedingly natural and probable, and in a just view of the case it is quite immaterial whether the wreck, when found, was at a distance of twenty leagues from Seguin, or not. The rate of salvage depends not so much upon the distance from land at which the property is found, as upon the risk and labor in saving it.

The facts which stand on evidence not easy to be disbelieved, are, that the salvors were employed nearly four days, in severe and continued labor, both by night and by day, in bringing the wreck to a place of safety. The amount of property put at hazard by the salvors, including the Merit and her cargo, was, at the lowest estimate, 3,600 dollars, one half of which was insured. The insurance on the cargo was certainly lost; for, though a deviation to save life will not discharge the underwriters, a deviation to save property will. The insurance on the vessel being on time, and not for the voyage, whether the benefit of the policy was lost or not, may not perhaps be so certain. There may be some difficulty in applying precisely the doctrine of deviation to a vessel insured on time, yet it is, to say the least, a grave question whether, under such a policy, she is authorized to engage in an enterprise so unusual, and of such extraordinary hazard, and if she were lost while engaged in this service, it is not by any means certain that the insurers would be liable for the loss.

With respect to the rate of salvage, the general rule is that it shall be a liberal reward, and not limited to a mere quantum meruit for the labor and service performed. And this is the only general rule of universal obligation which can be extracted from the practice of nations, or from the cases decided by our own courts. The cases of salvage are so various in their circumstances and degrees of merit, that every case, subject to the rule that has been mentioned, must stand upon its own facts, independent of any positive rule, and free from the authority of precedent absolutely binding on the judgment of the court. But though precedents are not conclusively binding, they present analogies which afford some light to the judgment and fix some limits to judicial discretion. Such a general guide the practice affords in cases of derelict. Anciently it was a positive rule of the admiralty, in these cases, to allow one half to the salvors. But this, as a binding rule, is now supposed to be obsolete. The Aquila, 1 C. Rob. Adm. 37. It is, however, in this country still held to be a general rule, limiting in some degree the discretion of the court, but yielding to the peculiar reason of particular cases. In cases where the value of the property saved is very large, and the danger and labor of saving it not great, less than a moiety may be considered as an ample reward; while in others, where the amount of property saved is small, and the risk and labor great, one half might be a very inadequate compensation. The rule, therefore, still considered in force as a general guide of judicial discretion, bends to the reason and equity of particular cases. In the case of Row v. The Brig [Case No. 12,093], in which the subject was learnedly discussed, and all the authorities examined, the court say that prima facie the salvors are entitled to a moiety, and it is incumbent on the claimant to show, in any particular case, that a different measure ought to be applied. Or if the salvors claim a larger share, it belongs to them to extract the case from the general rule, and show that a larger share ought to be allowed. The present is clearly a case of derelict, and under all its circumstances I do not feel warranted in giving less than one half of the gross proceeds of the sales. The amount of property saved is not large, and is considerably less than that put at hazard; while on the other hand, the peril was not great, and the labor, though severe for the time, was not of long duration. I can see no sufficient reason for departing from the general rule.

The gross amount of sales is $2,617.37, one half of which is allowed to the salvors, amounting to $1,308.68. Of this, two-fifths are allowed to the owner of the Merit and her cargo. The residue I shall divide into nine shares, and distribute as follows:—

| | | | |
|---|---|---|---|
| To John Sylvester, master, 4 shares | | | $ 332 81 |
| ——— ———, mate, | 2 " | | 166 16 |
| Israel Snow, seaman, | 1 " | | 83 07 |
| William Pearsley, " | 1 " | | 83 07 |
| Isaac McCobb, " | 1 " | | 83 07 |
| John Sylvester, the amount paid to David Manson, a passenger, | | | 37 50 |
| John Sylvester, owner of the Merit and her cargo, | | | 523 50 |
| | | | $1,308 68 |